*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00076-CR

Timothy K. **EVANS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-6637
Honorable Sharon MacRae, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Rebecca Simmons, Justice
            Steven C. Hilbig, Justice

Delivered and Filed:   November 12, 2008

AFFIRMED IN PART, REVERSED AND RENDERED IN PART

Timothy K. Evans was convicted of aggravated sexual assault of a child and indecency with a child by contact. In one issue on appeal, Evans contends that because both convictions were based upon the same fact scenario, his right to be free from double jeopardy under both the United States and Texas Constitutions was violated. We agree that Evans's right to be free from double jeopardy was violated and, therefore, affirm the judgment on Count I, but reverse and render a judgment of acquittal on Count II.

## FACTUAL AND PROCEDURAL BACKGROUND

Timothy Evans was indicted on two counts. In Count I, he was charged with aggravated sexual assault of a child, and in Count II, he was charged with indecency with a child by contact. After being found guilty on both counts, Evans was sentenced to sixty years confinement with respect to Count I and twenty years confinement with respect to Count II. The sentences are to run concurrently.

At the time of the incident, the victim, C.C., was twelve years old. On the evening of the incident, C.C. and some of his family members had been to a party. At the end of the evening, C.C.'s dad gave him permission to spend the night at the home of some family friends. The family friends were Mario Borjas, who was at the party that evening, and Borjas's partner, David Ewell, who had remained home that evening with Borjas and Ewell's adopted son. When C.C. left the party with Borjas, Evans also left with them. When they arrived at the home shared by Borjas and Ewell, Evans, who was drunk, decided to spend the night there also.

Borjas got C.C. settled in to sleep on a couch in the living room. Evans slept on another couch in the same room. C.C. testified that he went to sleep while watching television, but was awakened when he felt Evans's teeth on his "private." He described his private as the part of his body that he uses to pee. According to C.C., Evans was on his knees, and his teeth were going up and down. C.C.'s pants and underwear were down at his knees, but C.C. had not pulled them down. C.C. then rolled over so Evans would get off. Evans told C.C. not to tell anyone.

David Ewell testified that he was asleep that night, but was awakened when he heard Borjas, Evans, and C.C. come into the house. At some point, he heard the television and decided to get up and see why it was still on. He peeked into the living room and saw C.C. asleep on the couch with

Evans on his knees right beside C.C. Evans was kissing C.C. on the head. Ewell continued to watch and saw Evans caressing C.C.'s shoulders. Evans then got up and went to the kitchen. Ewell, not wanting Evans to see him, went back to his bedroom. Ewell heard Evans getting a drink of water and then returning to the living room. Ewell went back to watch Evans and saw him again kissing C.C.'s forehead and massaging him. Evans then moved to the other end of the couch and began kissing C.C.'s feet and toes. Evans then went back to the kitchen for another drink of water, and Ewell again went back to his own bedroom. After Ewell heard Evans return to the living room, Ewell again went back to the living room and saw Evans kiss C.C. again on the head. Ewell then heard Evans say this cannot be talked about with anybody. Ewell did not see any form of copulation nor did he see Evans's mouth contact C.C.'s penis. Evans then passed out on the floor.

The following morning, Ewell told Borjas what he had seen. Borjas confronted Evans with what Ewell had told him. When asked how Evans reacted to the accusation, Borjas testified Evans reacted "real bad. He was saying that he couldn't believe it. That he was sorry . . . . [That] he couldn't believe it. . . . That he wasn't gay. And that he was really sorry that he had done it. And he couldn't remember, and he wanted to throw up." Later that day, Borjas took C.C. home. However, because C.C.'s family was having a party, Borjas did not tell C.C.'s dad what had happened until the next day.

After Borjas called C.C.'s dad to report the incident, Evans also called C.C.'s dad and told him, "I think I f_____ up." C.C.'s dad, however, told Evans he could not talk because he was at work and in the middle of a meeting with his boss. After the meeting was finished, C.C.'s dad called C.C.'s school counselor, who was also a friend, and asked her to talk to C.C. C.C. told the school

counselor, and later his dad, what had happened with Evans. C.C.'s dad then called the police to report the incident. Evans was then arrested and charged.

### DOUBLE JEOPARDY

The Double Jeopardy Clause of the Fifth Amendment, applicable to all states through the Fourteenth Amendment, protects an accused (1) against a second prosecution for the same offense for which he has already been acquitted or convicted and (2) from being punished more than once for the same offense. *Littrell v. State*, No. PD-1555-07, 2008 WL 4569886, at *1 (Tex. Crim. App. Oct. 15, 2008). This case involves the issue of multiple punishments resulting from a single prosecution.

In Count I, the indictment against Evans charged that Evans intentionally and knowingly caused the sexual organ of C.C., a child younger than fourteen years, to contact and penetrate Evans's mouth. In Count II, the State alleged that Evans intentionally and knowingly engaged in sexual contact with C.C., a child younger than seventeen years by touching part of the genitals of C.C. with the intent to arouse or gratify the sexual desire of any person.

Relying primarily on *Ochoa v. State*, 982 S.W.2d 904 (Tex. Crim. App. 1998), Evans argues that his rights under the Double Jeopardy Clause were violated because the jury was allowed to convict him of two offenses relating to the same fact scenario. Like Evans, Ochoa was indicted for and found guilty of both indecency with a child and aggravated sexual assault. *Id.* at 905. Both offenses were alleged to have occurred on the same date. *Id.* According to Ochoa, the same alleged criminal act on his part was being used to convict him of both offenses. *Id.* at 907. The Texas Court of Criminal Appeals agreed, holding that because the evidence, which consisted of the child's statement that he "put his thing in my butt," referred to only one incident, Ochoa committed only one

offense. *Id.* According to the court, Ochoa "committed one act, which could be subject to two different interpretations." *Id.* at 908. In other words, the jury could have concluded that "penetration occurred and convicted appellant of aggravated sexual assault," or they could have concluded "only contact occurred with intent to arouse and gratify sexual desire and convicted appellant of the lesser offense of indecency with a child." *Id.* However, the jury could not convict the appellant of both. *Id.*

By comparison, in a similar case where a defendant was charged with both indecency with a child and aggravated sexual assault of a child, this court found no violation of the Double Jeopardy Clause where the evidence showed there were separate incidents occurring on distinctly different occasions. *See Martinez v. State*, No. 04-05-00743-CR, 2006 WL 2612517, at *4 (Tex. App.—San Antonio 2006, no pet.) (not designated for publication) (holding that there was no violation of the Double Jeopardy Clause where the jury could find from the evidence the defendant was guilty of separate acts of penetration and sexual contact).

Here, the evidence relating to the incident involving Evans and C.C. consists of Ewell's testimony and C.C.'s testimony. Ewell testified that he observed three separate occasions where Evans was massaging and kissing C.C.'s face, shoulders, and feet. As Evans points out, however, this testimony does not support a conviction for indecency with a child because Ewell did not observe Evans touching C.C.'s anus, breast, or genitals. *See* TEX. PENAL CODE ANN. § 21.11(c) (Vernon 2003). Moreover, Ewell testified that he did not observe any penetration. Thus, although Ewell did observe some contact between Evans and C.C., none of what he observed would support a conviction for either indecency with a child by contact or aggravated sexual assault of a child. Further, C.C. did not provide testimony of two separate and distinct sexual acts that would support

Evans being found guilty of two offenses. C.C. testified that when he awoke, Evans had his teeth on C.C.'s penis and was moving up and down. This is evidence of only one sexual act.

We note that the State argues there was evidence that allowed the jury to reasonably infer that Evans not only caused C.C.'s sexual organ to penetrate Evans's mouth, but also that Evans touched C.C.'s sexual organ. Specifically, the State contends that the jury could reasonably infer Evans touched C.C.'s genitals as he pulled down C.C.'s pants, as he prepared to perform oral sex on C.C., and as he put C.C.'s genitals in his mouth. We do not agree. The evidence shows only one sexual act, not separate and distinct sexual acts. *See Martinez*, 2006 WL 2612517, at *4. Therefore, because there was evidence of only one sexual act committed by Evans, we hold that Evans's rights under the Double Jeopardy Clause were violated.

## CONCLUSION

When a defendant's double jeopardy rights are violated, the remedy is to vacate the lesser conviction and sentence. *Ochoa*, 982 S.W.2d at 908. We, therefore, affirm the judgment on Count I, aggravated sexual assault of a child, but reverse and render a judgment of acquittal on Count II, indecency with a child.

Karen Angelini, Justice

DO NOT PUBLISH